**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


STEVEN TURBI,

     Petitioner,

v.                                       Case No. 18-cv-40-T-33CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.
_____/

## ORDER

     Steven Turbi, a Florida inmate, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and supporting memorandum (Doc. 2) challenging his Polk County convictions.  Respondent filed a response (Doc. 8) and Turbi filed a reply (Doc. 12).  Upon review, the petition is DENIED.

**Procedural History**

     Turbi was convicted after a jury trial of burglary while armed and with an assault and battery; robbery with a deadly weapon; possession of cannabis; and possession of drug paraphernalia.  (Doc. 11, Ex. 3).  The state trial court sentenced him to 20 years in prison.  (Doc. 11, Ex 4). The state appellate court affirmed the convictions and sentences in a written opinion.  *Turbi v. State*, 171 So.3d 787 (Fla. 2d DCA 2015).  Turbi filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Doc. 11, Ex. 11).

The state postconviction court summarily denied the motion, and the state appellate court *per curiam* affirmed the denial of relief.  (Doc. 11, Exs. 12, 14).

Turbi's second postconviction motion, filed while his initial collateral appeal was pending, was dismissed by the state postconviction court.  (Doc. 11, Exs. 16, 17).  The state appellate court *per curiam* affirmed the dismissal.  (Doc. 11, Ex. 19).  Turbi's third postconviction motion was denied as successive.  (Doc. 11, Exs. 21, 22).  The state appellate court *per curiam* affirmed the denial.  (Doc. 11, Ex. 23).

### Facts[1]

Atiya Sampson-Davis managed a restaurant inside the Stonegate Golf Club.  On the night of December 7, 2012, she was counting money in her office after closing.  She heard a knock at the office's exterior door.  Expecting the banquet manager to bring her cash, Sampson-Davis replied for the person at the door to come in.  When no one entered, she opened the door to find two masked men with firearms.  They came into the office, where one man held a gun to her head while the other took money from her desk and a safe. After they left, she called 911.

Sampson-Davis told police that she recognized a tattoo on the arm of the man who took the money.  She said a former employee, Steven Turbi, had the same tattoo.  During his employment, she had asked Turbi about the tattoo and, as his supervisor, had admonished him to cover it in accordance with the restaurant's policies.   She further told police that both perpetrators were dressed in black clothing.

Police established a perimeter around the area.  Deputy Kevin Schuttler saw Turbi

---

[1] The factual summary is based on the trial transcript.

walking approximately one to two miles away from the restaurant. He was wearing black clothing, appeared sweaty, and had vegetation stuck to his pants legs. After obtaining Turbi's name and observing the tattoo on his arm, Deputy Schuttler detained Turbi and found a bag containing marijuana on his person. After Turbi's apprehension, police continued to search for his accomplice. A police dog tracked about half a mile from the restaurant before losing the scent. Turbi's accomplice was never arrested.

## Standard Of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

### Discussion

<u>Ground Two</u>

Turbi contends that his conviction and sentence for burglary are illegal because the charging document referenced "the previous statutory language of Section 810.02", Fla. Stat. (Doc. 1, p. 5). The charging document alleges that:

> STEVEN TURBI on or about December 7, 2012, in the County of Polk and State of Florida, did knowingly enter *or remain in* a structure, the property of ATIYA SAMPSON-DAVIS, while armed with a handgun, a dangerous weapon, or in the course of committing the burglary made an assault or battery upon ATIYA SAMPSON-DAVIS with the intent to commit an offense therein, contrary to Florida Statute 810.02.

(Doc. 11, Ex. 1, p. 12) (emphasis added).

Turbi claimed in his postconviction motion that "[t]he above statutory language *or remain in* does not apply to Turbi because the language is only applicable to crimes of burglary committed on or before July 1, 2001." (Doc. 11, Ex. 11, p. 19) (emphasis in original).[2] The state court denied Turbi's claim, finding that "[t]he alleged error does not

---

[2] Florida's burglary statute provides:

(1)(a) For offenses committed on or before July 1, 2001, "burglary" means entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter.

(b) For offenses committed after July 1, 2001, "burglary" means:

1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or

2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:

a. Surreptitiously, with the intent to commit an offense therein;

b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or

c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.

create a fundamental defect, and most certainly does not show the Defendant was charged with a non-existent crime." (Doc. 11, Ex. 12, p. 42).

Preliminarily, Turbi's claim is not cognizable because he does not clearly allege a federal constitutional violation. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988) (affirming the dismissal of a state law claim as not cognizable in a federal habeas action and stating that "a habeas petition grounded on issues of state law provides no basis for habeas relief."). Even if Turbi's claim is interpreted as raising a federal constitutional challenge to the validity of his conviction, and assuming the federal claim was exhausted in state court, Turbi's claim remains uncognizable. To raise a cognizable federal habeas claim alleging an error in a state court charging document, the charging document must be so defective that it deprives the court of jurisdiction. *See DeBenedictis v. Wainwright*, 674 F.2d 841, 842 (11th Cir. 1982) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction.").

Turbi has not made this showing. Florida law provides that state circuit courts have jurisdiction over felony cases. § 26.012(2)(d), Fla. Stat. The information identified Turbi and the victim, described the date and location of the offense, and cited the burglary statute, thereby placing Turbi on notice of the burglary charge. (Doc. 11, Ex. 1, p. 12). Turbi does not allege that the information omitted an element of burglary. *See, e.g., Figueroa v. State*, 84 So.3d 1158, 1161 (Fla. 2d DCA 2012) ("[A]n information is fundamentally defective where it fails to cite a specific section and totally omits an essential

_____

§ 810.02(1)(a), (b), Fla. Stat.

element of the crime.").

The information also contains the required oath of the Assistant State Attorney certifying that the allegations in the information "are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged," and that "testimony under oath has been received from the material witness or witnesses for the offense." (Doc. 11, Ex. 1, p. 14). *See* Fla. R. Crim. P. 3.140(g) (setting forth requirements of the oath). Turbi has not established that the testimony presented to the prosecutor was insufficient to support the charging document. Therefore, he does not show any defect in the charging document that deprived the state court of jurisdiction so as to raise a cognizable claim on federal habeas review. Turbi is not entitled to relief on Ground Two.

*Ineffective Assistance Of Counsel*

The rest of Turbi's claims allege ineffective assistance of counsel. These claims are analyzed under the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Turbi must demonstrate that his counsel performed deficiently in that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Turbi must also show that he suffered prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Obtaining relief on a claim of ineffective assistance of counsel is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the

benefit of the doubt.").

<u>Ground One</u>

Turbi argues that trial counsel was ineffective in presenting the motion for judgment of acquittal.[3]  When Turbi raised this claim in state court, he alleged that counsel should have argued that the evidence was insufficient because "the State's theory of prosecution did not overcome Turbi's hypotheses of innocence" and the jury only could have convicted him "by improperly pyramiding the evidence in violation of well established law."  (Doc. 11, Ex. 11, p. 17).  The state court denied Turbi's claim:

> Defendant's first claim is that trial counsel failed to argue insufficiency of evidence.  Defendant now claims that the State failed to overcome his hypothesis of innocence, and that trial counsel should have made these arguments in a judgment of acquittal, and in a motion for new trial.
>
> The record directly refutes this claim, as trial counsel did in fact make such arguments.  This argument was made in the Defense's Motion for Judgment of Acquittal, and rejected by the trial judge.  The Court also addressed this in trial counsel's Motion for New Trial claiming the verdict was against the greater weight of the evidence.  At the hearing on the motion, the Court stated "the jury obviously found that the circumstantial evidence provided by the State excluded any reasonable hypothesis of innocence."  As to the reasoning for this, the Court set forth in its Order Denying Defendant's Motion for Arrest of Judgment, Motion for New Trial, and Motion for Post-Trial Release entered on February 20, 2014, much of the facts discussed above, and found "[i]n the Court's view the Defendant's hypothesis of innocence was not reasonable as a matter of law.  Instead it was, as phrased in *Yudin v. State*, 117 So. 3d 457, 460 (Fla. 2d DCA 2013), at most *arguably*, rather than *patently*, reasonable."
>
> Therefore, trial counsel was not ineffective as he in fact did make the arguments related to this claim, and those arguments were considered by the Court and denied. Claim 1 is DENIED.

(Doc. 11, Ex. 12, pp. 40-41) (court's record citations omitted).

---

[3] Respondent contends that Turbi failed to satisfy the exhaustion requirement, *see* 28 U.S.C. § 2254(b)(1)(A), because he did not address the merits of this claim on collateral appeal.  The Court concludes that Turbi's appellate brief did raise the merits.  (Doc. 11, Ex. 13, pp. 13-16).

In moving for a judgment of acquittal, counsel challenged the sufficiency of the evidence, arguing that the State had not established Turbi's identity and had not presented a *prima facie* case of guilt. (Doc. 11, Ex. 2, Vol. I, pp. 111-20). And counsel argued in the motion for new trial that the verdict was contrary to the weight of the evidence. (Doc. 11, Ex. 12, p. 48). Accordingly, counsel did challenge the State's evidence, as the state court found. Turbi has not shown that counsel was ineffective in failing to more expressly allege that the State failed to overcome Turbi's reasonable hypotheses of innocence, or that the jury would be required to impermissibly stack inferences in order to convict him.

> A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis of innocence except that of guilt. *See Wilson v. State*, 493 So.2d 1019, 1022 (Fla. 1986). Consistent with the standard set forth in *Lynch* [*v. State*, 293 So.2d 44 (Fla. 1974)], if the state does not offer evidence which is inconsistent with the defendant's hypothesis, "the evidence [would be] such that no view which the jury may lawfully take of it favorable to the [state] can be sustained under the law." 293 So.2d at 45. The state's evidence would be as a matter of law "insufficient to warrant a conviction." Fla.R.Crim. P. 3.380.

*State v. Law*, 559 So.2d 187, 188-89 (Fla. 1989).

Turbi alleged that he was not one of the perpetrators. He was arrested a short distance from his home, and claimed that he was merely walking outside to smoke a cigarette when he encountered Deputy Schuttler. However, the State presented evidence of Turbi's identity from which the jury could exclude his hypothesis of innocence. Sampson-Davis stated that the man who took money from her office had a tattoo consistent with Turbi's tattoo. (Doc. 11, Ex. 2, Vol. I, p. 44). She also testified that Turbi knew of the safe in the office. (*Id.*, p. 47). She explained that to get his tips, he had come to the office and see a supervisor, who retrieved the money from the safe. (*Id.*, pp. 47-48). Further,

Turbi had worked the closing shift while employed at the restaurant. (*Id.*, p. 48).

Additionally, the State's evidence showed that police located Turbi less than two miles from the crime scene in clothing consistent with Sampson-Davis's description of the perpetrators' clothing. (*Id.*, pp. 39-40, 87, 97-99). It appeared he might have been running, as he was sweaty and had plant matter stuck to his pants. (*Id.*, pp. 88, 99). In light of this evidence, Turbi has not shown that counsel was ineffective in not more specifically arguing that the State's evidence did not exclude his hypothesis of innocence, or that he was prejudiced by counsel's failure.

Nor does Turbi demonstrate that counsel was ineffective in failing to argue that the jury could only find him guilty by impermissibly stacking inferences. "An impermissible pyramiding of inferences occurs where at least two inferences in regard to the existence of a criminal act must be drawn from the evidence and then stacked to prove the crime charged; in that scenario, it is said that the evidence lacks the conclusive nature to support a conviction." *Graham v. State*, 748 So.2d 1071, 1072 (Fla. 4th DCA 1999).

Turbi does not explain how the State's evidence would have required the jury to impermissibly stack inferences. He merely claims, in a conclusory manner, that "the evidence was wholly circumstantial and the only way any reasonable juror could have determined Turbi played a part in the crimes was by improperly pyramiding the evidence." (Doc. 1, p. 5). But the State may prove its case through the presentation of circumstantial evidence. *See State v. Castillo*, 877 So.2d 690, 693 (Fla. 2004) ("[I]t has long been established that circumstantial evidence is competent to establish the elements of a crime."). Turbi's claim is too conclusory and speculative to warrant relief. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (a federal court may not grant habeas relief "on the

basis of little more than speculation with slight support."); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Turbi has not shown that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground One.

<u>Ground Three</u>

Consistent with the standard instruction for burglary, the jury was instructed that they could "infer that the defendant had the intent to commit a crime inside the structure if the entry or attempted entry of the structure was done stealthfully and without the consent of the owner or occupant." (Doc. 11, Ex. 2, Vol. II, pp. 199-200). *See* Fla. Std. Jury Inst. (Crim.) 13.1. Turbi argues that trial counsel was ineffective in failing to object to the stealthy entry instruction because it involved "an uncharged theory of prosecution." (Doc. 1, p. 6). The state court denied Turbi's claim:

> Claim 3 alleges trial counsel was ineffective for failing to object to a jury instruction of "stealth[ ]y entry". As discussed above and even in the Defendant's own motion, this case was one of identification. It was never argued to the jury that the Defendant's intent in committing an offense was implied through any stealthy entry. In fact, the evidence and the jury verdict is to the contrary. In count 2 the Defendant was charged with Robbery with a Deadly Weapon. This robbery occurred after the burglary, as the Defendant stole money off the desk and in the safe of the office. There was no need to imply any intent to commit an offense, as the jury found beyond a reasonable doubt that the Defendant committed the robbery. Claim 3 is DENIED.

(Doc. 11, Ex. 12, p. 42).

Turbi has not established prejudice as a result of counsel's failure to object to the stealthy entry instruction. As the state court's order indicates, a jury will likely discount an

inapplicable instruction. *See Reed v. State*, 208 So.3d 1231, 1235 (Fla. 1st DCA 2017) ("A jury is likely to disregard an option simply unsupported by the evidence. We see no reason to conclude that the jury in this case did not disregard the stealthy-entry inference based on the manifest lack of evidence to support it, the lack of argument in favor of it, the persuasive argument against it, and the evidence of his intent to commit a crime without it.") (internal quotation marks and citation omitted). Turbi fails to show a reasonable probability that the outcome of trial would have been different had counsel objected to the jury's receiving the stealthy entry instruction. Because he does not show that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact, Turbi is not entitled to relief on Ground Three.

Ground Four

Turbi claims that trial counsel was ineffective in failing to move to sever counts one and two (burglary and robbery) from counts three and four (possession of cannabis and possession of drug paraphernalia). He asserts that the drug charges "had absolutely no bearing on whether or not he committed the burglary or robbery." (Doc. 1, p. 6).

The state court denied Turbi's claim:

Claim 4 alleges trial counsel failed to file a motion to sever the Defendant's possession charges. The Defendant makes a conclusory statement that trial counsel should have moved for severance to "promote a fair determination of guilt or innocence." Such a mere conclusory statement in itself does not rise to a facially sufficient claim. "Although some prejudice exists during any trial in which multiple offenses are tried together, this 'garden variety' prejudice is not sufficient to justify severance." *Fletcher v. State*, 168 So. 3d 186, 203 (Fla. 2015) (citing *Lugo v. State*, 845 So. 2d 74, 96 n.39 (Fla. 2003)).

Although this claim is insufficiently pled, allowing the Defendant an opportunity to amend would be futile. Defendant's charges are inextricably intertwined, and occurred within a relatively short period of time. The

Defendant was detained and the marijuana and paraphernalia discovered because he had matched the description given by the victim of the burglary and robbery, was close in the area, and appeared to have been sweating as if he was running. Therefore, claim 4 is DENIED.

(Doc. 11, Ex. 12, pp. 42-43).

It appears that in his postconviction motion, Turbi referred to Florida Rule of Criminal Procedure 3.152(a)(2)(A), which provides that a defendant may obtain severance of charges of related offenses upon showing "that the severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." "In determining whether severance is warranted, a court must consider several factors, including the temporal and geographic association of the crimes, the nature of the crimes, and the manner in which the crimes were committed." *Bell v. State*, 33 So.3d 724, 725 (Fla. 1st DCA 2010).

Whether severance would have been appropriate involves an application of Florida law. This Court must defer to the state court's finding that severance was not appropriate. Although Turbi's ineffective assistance of counsel claim is a federal constitutional claim, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." *Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). *See also Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them

on such matters.'" (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997))).

Further, in light of the State's evidence, Turbi does not show a reasonable probability of a different outcome with respect to any of the charges, even if they had been severed as he proposes. Turbi has not shown that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact. He is not entitled to relief on Ground Four.

Ground Five

Turbi alleges that trial counsel was ineffective in failing to object when, during deliberations, the jury requested and was provided a map that had been used as a demonstrative aid but had not been introduced into evidence. It appears that the State utilized the map to show the police perimeter, the path of the police dog's track, and the location where Deputy Schuttler located Turbi. (Doc. 11, Ex. 2, Vol. II, pp. 66-67, 96-98).

The state court denied Turbi's claim:

Claim 5 alleges trial counsel rendered ineffective assistance by failing to object to the jury reviewing a demonstrative aid during deliberations. Additional context other than that as pled by the Defendant's motion is necessary to understand why this claim is without merit.

The State relied on the demonstrative aid that this claim is based on to place the Defendant's location of where he was detained by Detective Schuttler, and the direction the K9 tracked until the scent was lost. The Defendant is correct that this demonstrative aid was not entered into evidence. The Defendant however presented his own theory that his house was located approximately one block from where he was detained.

When informed the jury wanted to see the map, the Court explained "[i]t's not been introduced into evidence, so the formal answer is you can't have it, because it was not used as an exhibit." After this explanation, defense counsel was given an opportunity to object, requested to see the map more closely, and spoke with the Defendant regarding this decision. After all of this, the defense opted to allow the jury to have the demonstrative aid in deliberations. Trial counsel was therefore very familiar with the law, having

been informed by the Court of its decision unless the defense did not object. The Defendant and trial counsel were then given an opportunity to discuss the matter, and apparently chose the strategy to allow the jury to have the aid. Furthermore, the Defendant has failed to sufficiently state any prejudice, other than the mere conclusory statement that he was convicted, and would not have been had the jury not reviewed the demonstrative aid. Claim 5 is DENIED.

(Doc. 11, Ex. 12, p. 43).

As the state court noted, the trial transcript reflects that Turbi and his counsel agreed

that the jury could have the map:

THE BAILIFF: Judge, they want the map.

THE COURT: Well, they want the - - well, let's put this on the record.

Ms. Jackson advised us the jurors have asked for the map. And every time y'all do this demonstrative-aid business, I warn you, they're going to want the map. It's not been introduced into evidence, so the formal answer is you can't have it, because it was not used as an exhibit. They want it for a reason. I don't know who they're going to get mad at if they don't get it.

THE BAILIFF: You want me to have them put it down as a question - -

THE COURT: No, that's all right.

I'm willing to do it, but you know, if either party objects to it, I have to tell them it's not.

[THE STATE]: It's going to be up to the defense counsel, Judge.

THE COURT: Is it all right if they have it?

[COUNSEL]: Can I look at it a little bit more closely?

THE COURT: And I'm willing to bend the rules if both sides agree.

[COUNSEL]: Let me speak with Mr. Turbi, please.

THE COURT: Certainly. Mr. Turbi, you need to understand that I'm offering to do this because the jury's asked for it. But if anybody objects to it, since it wasn't made an exhibit - - you know, I can't force this decision on anybody. I'm just offering to do it if both agree.

Okay. Well, I don't need - - I don't really need to explain at all with the jury what we talked about. Just give it to them.

Let the record reflect that neither side objected.

(Doc. 11, Ex. 2, Vol. II, pp. 222-24).

Turbi fails to establish a reasonable probability that the outcome of trial would have been different had counsel objected to the jury's viewing the map. Turbi makes a conclusory and speculative argument that "[o]bviously, the purported layout in the map was incriminating where after the jury received it, they determined Turbi was guilty as charged." (Doc. 1, p 6). This kind of speculation does not warrant federal habeas relief. *See Bartholomew*, 516 U.S. at 8; *Tejada*, 941 F.2d at 1559. Turbi does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. Consequently, he is not entitled to relief on Ground Five.

Ground Six

Turbi contends that trial counsel was ineffective in failing to investigate and present evidence about Sampson-Davis's alleged motive to testify. He explains:

> Prior to trial, [Turbi] advised defense counsel that the alleged victim accused him of committing the charged crimes due to a vendetta she had against him and his girlfriend, Rosalynn Lugo. Specifically, Turbi advised defense counsel that he, his girlfriend, and the alleged victim had all worked together at the Stonegate Golf Club restaurant where the alleged victim was the supervisor. There came a time when receipts for food were coming up voided, allegedly due to Turbi's girlfriend messing up the food orders. Turbi and his girlfriend did not agree with this and accused the supervisor of voiding the receipts and pocketing the cash. This led Turbi's girlfriend to report the alleged victim to the store manager. After the incident became official, there were no more alleged complaints about messed up food orders, nor were there anymore unexplained voided food receipts. However, the atmosphere remained thick with animosity on behalf of the alleged victim, leading Turbi and his girlfriend to expect something uncanny to eventually come from their supervisor . . .

Had defense counsel investigated this matter, Turbi's girlfriend would have been available to be called as a witness to testify to the foregoing. Evidence of this nature would have explained why the alleged victim would have falsely testified Turbi as one of the alleged culprits who robbed her, creating reasonable doubt on the State's theory of prosecution.

(Doc. 1, pp. 6-7).

The state court denied Turbi's claim:

The Defendant's claim is simply beyond any reason, and even if this evidence had been presented, at the very best, would have had no effect on the outcome of the case. More likely, this testimony would simply corroborate the State's theory that as a former employee, the Defendant was in fact familiar with the closing procedure at this location. The issue with presenting this evidence as defense suggests that the victim waited approximately one-two years after the Defendant no longer worked at this location to set up this conspiracy implicating him in this crime. This would further suggest in an unlikely coincidence that the Defendant happened to be out in the area on the same night the victim created this conspiracy, wearing the same type of clothing described by the victim, in the same direction the K9 tracked, appearing wet as if he had been running, with vegetation stuck to the bottom of his pants. Similar to the explanation in count 1, this evidence far outweighs the Defendant's current hypothesis he would now offer in this claim. Finding the Defendant unable to establish any prejudice, claim 6 is DENIED.

(Doc. 11, Ex. 12, pp. 43-44).

The state court reasonably denied Turbi's ineffective assistance claim, which is too speculative to provide relief. First, Turbi presents no evidence in support of his theory that Sampson-Davis had a "vendetta" against him. Second, he has not offered any evidence showing that Rosalynn Lugo would have testified as he claims. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence

about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

Furthermore, considering the State's evidence of his identity, Turbi fails to establish a reasonable probability that the outcome would have been different had his attorney investigated and presented evidence concerning the victim's alleged motive to testify. Turbi fails to show that the state court's rejection of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Turbi is not entitled to relief on Ground Six.

Ground Seven

Turbi claims that counsel was ineffective in failing to convey to him the State's plea offer for eight years in prison followed by five years on probation. The State court denied this claim:

> This claim alleges trial counsel failed to convey a plea offer to the Defendant. The Defendant relies on a document request to the State Attorney's Office, where a written plea agreement was provided to the Defendant that he now claims he would have accepted. The Defendant attached this plea agreement to his motion as Exhibit A. The Defendant assumes based on this information, that this offer was in fact made by the State Attorney's Office, and presented to trial counsel. The record refutes this.

> First, this court notes that the plea agreement is dated by the Assistant State Attorney as October 5, 2015. The Defendant's jury trial was held on January 7, 2014, and he was sentenced on March 13, 2014. Next, the prosecutor stated at the sentencing hearing "[a]nd I would just like to put on the record an offer was never made in this case." Although such a plea offer may have been contemplated by the State Attorney's Office, the record is clear that this offer was never made. Therefore, trial counsel could not have been ineffective. Claim 7 is DENIED.

(Doc. 11, Ex. 12, p. 44).

The state court did not unreasonably deny relief.  As the court noted, the plea form attached to Turbi's postconviction motion was dated after his trial had concluded, and Turbi fails to show that the State prepared it pursuant to an offer that was in fact presented to defense counsel.  (Doc. 11, Ex. 11,  p. 35).  Further, defense counsel did not object when the prosecutor stated on the record that no plea offers had been made in Turbi's case. (Doc. 11, Ex. 12, p. 102).  Accordingly, Turbi's unsupported claim that counsel failed to communicate a plea offer is too speculative to warrant relief.  *See Bartholomew*, 516 U.S. at 8; *Tejada*, 941 F.2d at 1559.  Turbi has not shown that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact.  He is not entitled to relief on Ground Seven.

Grounds Eight Through Eleven

In Grounds Eight through Eleven, Turbi alleges ineffective assistance of trial counsel.  Turbi presented these claims in a successive postconviction motion, which the state court dismissed as "an unauthorized successive motion."  (Doc. 11, Ex. 22).

If a state court's rejection of a federal constitutional claim is based on an "independent and adequate" state procedural ground, federal review of the claim is barred. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). *See also Canifl v. Moore*, 269 F.3d 1245, 1247 (11th Cir.2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").  A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the

state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)).

Further, to be considered adequate, a rule must be firmly established and regularly followed. *Lee v. Kemna*, 534 U.S. 362, 376 (2002). In Florida, a second or successive postconviction motion is an "extraordinary pleading." Fla. R. Crim. P. 3.850(h)(2).

> Accordingly, a court may dismiss a second or successive motion . . . if new and different grounds are alleged, [if] the judge finds that the failure of the defendant or the attorney to assert those grounds in a prior motion constituted an abuse of discretion or there was no good cause for the failure of the defendant or defendant's counsel to have asserted those grounds in a prior motion.

*Id.*

Florida decisions also address the dismissal of successive postconviction motions. *See Owen v. State*, 854 So.2d 182, 187 (Fla. 2003) ("A second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion. . . . [C]laims that could have been raised in a prior postconviction motion are procedurally barred."); *Christopher v. State*, 489 So.2d 22, 24 (Fla. 1986) (recognizing that Rule 3.850 allows a court to summarily deny a successive postconviction relief that raises new grounds).

The state court's reliance on an independent and adequate state bar to dispose of Turbi's claims results in a procedural default. Therefore, the claims can only be considered if Turbi establishes that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. *See Harris v. Reed*, 489 U.S. 255, 262

(1989) ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show" one of these exceptions).

Citing *Martinez v. Ryan*, 566 U.S. 1 (2012), Turbi asserts that he establishes the cause and prejudice exception to overcome the default. *Martinez* provides:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 17. To establish cause pursuant to this rule, "a petitioner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. *See also Duffy v. Sec'y, Dep't of Corr.*, 729 Fed. App'x 669, 670 (11th Cir. 2018) ("A defaulted claim is substantial if the resolution of its merits would be debatable among jurists of reason." (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003))).

Turbi has not shown that the defaulted claims of ineffective assistance of trial counsel raised in Grounds Eight, Nine, Ten, and Eleven are substantial under *Martinez*. Accordingly, he has not overcome the procedural default of these claims.

Ground Eight

Turbi claims that trial counsel was ineffective for not arguing in the motion for judgment of acquittal that the State failed to prove burglary in the manner charged in the information. He claims that "since the State failed to establish the 'remaining in' element and instead presented evidence indicating an unlawful entry, it appeared that Turbi would have been granted an acquittal had his trial counsel argued that the State failed to prove

a burglary in the manner charged in the information."  (Doc. 2, p. 3).

Turbi does not establish a substantial claim of ineffective assistance of trial counsel. The information charged him with either entering *or* remaining in the structure.  (Doc. 11, Ex. 1, p. 12).  As he concedes, the State presented evidence that he unlawfully entered the structure.  Accordingly, Turbi fails to show a reasonable probability that the outcome would have been different had counsel objected on the basis alleged.  Turbi has not overcome the procedural default of Ground Eight.

<u>Ground Nine</u>

Sampson-Davis testified at trial that both perpetrators carried handguns.  (Doc. 11, Ex. 2, Vol. I, p. 38).  She did not recall telling police that only one of the perpetrators had a gun but agreed that she might have done so:

> Q.  And you gave a statement to Detective Radabaugh on the early morning hours of, I guess, December 8th after that.  Was that at the scene or was that at the police station?
>
> A.  No, that was at the scene.
>
> Q.  That was at the scene?
>
> A.  Yes.
>
> Q.  Okay.  Do you recall - - well, first off, do you recall giving that statement?
>
> A.  I do.
>
> Q.  Okay.  Do you recall stating that it was only one individual that had a gun?
>
> A.  I may have.  That was a terrifying night - -
>
> Q.  Sure.
>
> A. - - you know, so I may have.  I don't recall if I said one or if I said two.  I don't recall.

(*Id.*, pp. 57-58).

Detective Matthew Radabaugh testified that Sampson-Davis stated that one of the individuals had a gun, and that the other did not. (*Id.*, p. 89). Turbi contends that trial counsel should have argued in the motion for judgment of acquittal that "Ms. Davis's prior inconsistent statement standing alone is insufficient to prove guilt beyond a reasonable doubt." (Doc. 1, p. 8).

Turbi's argument is unclear. The State did not rely on Sampson-Davis's prior inconsistent statement to police about whether both robbers carried firearms. The portions of Sampson-Davis's and Detective Radabaugh's testimonies addressed above were elicited by counsel on cross-examination. Furthermore, counsel addressed Sampson-Davis's prior inconsistent statements in moving for a judgment of acquittal. (Doc. 11, Ex. 2, Vol. I, pp. 117-18). Turbi has not established that trial counsel performed deficiently, or that he was prejudiced by counsel's performance. Accordingly, Turbi has not presented a substantial claim of ineffective assistance of trial counsel that establishes cause to excuse his procedural default of Ground Nine.

Ground Ten

Turbi claims that counsel should have objected that counts one and two violated double jeopardy. He claims that "the robbery was the only offense, committed while the armed burglary was in progress. The robbery subsumed into a greater offense of armed burglary with an assault or battery." (Doc. 2, p. 4).

The test for whether convictions for multiple offenses violate double jeopardy is "whether each provision requires proof of a fact with the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Burglary requires the entering of a structure with

the intent to commit an offense therein. § 810.02, Fla. Stat. These elements are not contained in the robbery statute. § 812.13, Fla. Stat. However, robbery requires proof of a taking, which is not an element of burglary. *See id.* Therefore, the offenses are not different degrees of the same crime, and one is not subsumed by the other. *See McAllister v. State*, 718 So.2d 917, 918 (Fla. 5th DCA 1998). Because Turbi does not show that his convictions for burglary and robbery violate double jeopardy, he cannot establish a substantial claim of ineffective assistance of trial counsel for failing to raise a double jeopardy objection. Turbi has not overcome the default of Ground Ten.

Ground Eleven

A person is liable as a principal if he "aids, abets, counsels, hires, or otherwise procures [any criminal offense] to be committed." § 777.011, Fla. Stat. In accordance with Florida's standard instructions, the jury was instructed:

> [I]f the defendant helped another person commit a crime, then he's deemed a principal, [and] must be treated as if he had done all the things that the other person or persons did if: First, he had a conscious intent that the criminal act be done. And, second, that he did some act or said some word, which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit the crime.

(Doc. 11, Ex. 2, Vol. II, p. 210).

Turbi argues that trial counsel was ineffective in failing to object to this instruction because the State did not cite the principals statute in the charging information. Turbi has not shown that this was a meritorious basis for objection. "Under Florida law, a person who is charged in an indictment or information with commission of a crime may be convicted on proof that she aided or abetted in the commission of such crime." *State v. Larzelere*, 979 So.2d 195, 215 (Fla. 2008). Accordingly, "if an information charges a defendant with a

substantive crime, . . . and the proof establishes only that he was feloniously present, aiding, and abetting in the commission of the crime, a verdict of guilt as charged should be sustained." *Watkins v. State*, 826 So.2d 471, 474 (Fla. 1st DCA 2002). *See also State v. Roby*, 246 So.2d 566, 571 (Fla.1971) ("Under our statute, . . . a person is a principal in the first degree whether he actually commits the crime or merely aids, abets, or procures its commission, and it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute.").

The principals instruction may be given if supported by the evidence adduced at trial. *See Roberts v. State*, 813 So.2d 1016, 1017 (Fla. 1st DCA 2002) ("There was sufficient evidence adduced in the state's case-in-chief to support [the principals] instruction; accordingly, the trial court did not err in granting the request for such an instruction, despite the fact that Roberts was not specifically charged with aiding and abetting.").

The State argued that the principals theory was relevant to show that Turbi was guilty of battery and assault during the burglary. (Doc. 11, Ex. 2, Vol. I, pp. 174-75). Turbi's accomplice held Sampson-Davis at gunpoint, putting a hand on her shoulder to keep her from moving and placing a gun to the back of her head. (*Id.*, pp. 39-43). The State also argued that, even if the jury did not believe Turbi carried a weapon, he was still guilty as a principal of burglary while armed and robbery with a deadly weapon because his accomplice carried a weapon. (Doc. 11, Ex. 2, Vol. II, p. 194).

Turbi fails to argue that the evidence did not support giving the principals instruction. Furthermore, the State's evidence was sufficient to show that Turbi intended that burglary and robbery be committed, and that his actions encouraged his accomplice enter the office

with a firearm and restrain the victim at gunpoint while he completed the robbery.

Accordingly, Turbi does not show that his trial counsel was ineffective in failing to object to

the principals instruction, or a reasonable probability that the outcome would have been

different had counsel done so.  As Turbi's ineffective assistance of trial counsel claim is not

substantial, he does not overcome the default of Ground Eleven.

Accordingly, it is **ORDERED** that Turbi's petition (Doc. 1) is **DENIED**.[4]  The Clerk is

directed to enter judgment against Turbi and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is **ORDERED** that Turbi is not entitled to a certificate of appealability ("COA").  A

prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district

court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a COA must first issue.  *Id.*

"A [COA] may issue . . . only if the applicant has made a substantial showing of the denial

of a constitutional right."  *Id.* at § 2253(c)(2).   To make such a showing, Turbi "must

demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)

(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were

'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S.

322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Turbi has

---

[4] In his reply, Turbi contends that the state postconviction court's refusal to grant him an evidentiary hearing resulted in a federal due process violation.  His claim is not cognizable on federal habeas review.  *See Anderson v. Sec'y, Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006) ("[T]he state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief.").  Nor is Turbi entitled to an evidentiary hearing on the claims raised in his federal habeas petition.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (a district court is not required to conduct an evidentiary hearing on a habeas petition if the record refutes the petitioner's factual allegations or otherwise precludes relief).

not made the requisite showing.  Finally, because Turbi is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on August 9, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Steven Turbi
Counsel Of Record